1

2

3                                                                    O

4                                                          NO JS-6

5

6                    UNITED STATES DISTRICT COURT

7                   CENTRAL DISTRICT OF CALIFORNIA

8

9

10

11   John Doe,                    )    Case No. EDCV 13-02262 DDP (SPx)
                                   )
12            Plaintiff,           )    **ORDER GRANTING DEFENDANTS' MOTION**
                                   )    **TO DISMISS PLAINTIFF'S FIRST**
13       v.                        )    **AMENDED COMPLAINT**
                                   )
14   JEFFREY A. BEARD, Secretary,  )    [Dkt. Nos. 24, 27]
     The California Department of  )
15   Corrections and              )
     Rehabilitation; MS. I.        )
16   YOUNG, a Health Records       )
     Technician for the           )
17   California Department of     )
     Corrections and              )
18   Rehabilitation; MS. LOGAN, a )
     Patient Access and Health     )
19   Records Supervisor for the    )
     California Department of     )
20   Corrections and              )
     Rehabilitation; SGT. NASH, a )
21   prison guard for the          )
     California Department of     )
22   Corrections and              )
     Rehabilitation; SGT.          )
23   BOTELLO, a prison guard for   )
     the California Department of  )
24   Corrections and              )
     Rehabilitation; et al.        )
25                                 )
              Defendants.          )
26                                 )
                                   )
27   _____   )

28

1    Presently before the court is Defendants' Motion to Dismiss
2  Plaintiff's First Amended Complaint.[1] (Dkt. Nos. 24, 27.) The
3  Motion is fully briefed. Having considered the parties' submissions
4  and heard oral argument, the court adopts the following order.

**I.   Background**

The following allegations are drawn from Plaintiff's First
Amended Complaint:

K.L. ("Plaintiff") was an inmate at the California Institute
for Men in Chino, California, residing in Angeles Hall. (FAC ¶ 20.)
Plaintiff is HIV positive and suffers from hepatitis C and lupus.
(<u>Id.</u> ¶¶ 2, 21, 35.)

Shortly after becoming incarcerated, Plaintiff met with prison
medical staff. (<u>Id.</u> ¶ 21.) In order to receive treatment for his
lupus, he completed and submitted paperwork to Defendant California
Department of Corrections and Rehabilitation ("CDCR") authorizing
the transfer of medical records from his previous medical provider.
(<u>Id.</u> ¶¶ 21-23.) Plaintiff's medical records were transferred in
January 2012, and, as a result, Defendants maintained medical
records which included information concerning Plaintiff's HIV
status. (<u>Id.</u> ¶ 28.)

On January 21, 2012, Defendant Ms. I. Young ("Young"), a CDCR
Health Records Technician, visited Plaintiff for the purpose of
providing Plaintiff with a copy of his medical records. (<u>Id.</u> ¶ 30.)
When she arrived she was unable to locate Plaintiff's records, but

---

[1] On May 30, 2014, Defendant G Nash filed a motion to join the
Motion to Dismiss filed by the other Defendants on May 15, 2014.
(Dkt. Nos. 24, 27.)

1   indicated they were likely in her office. (Id.) In fact, she had

2   given Plaintiff's medical records to another inmate, E. Leopoldo

3   ("Leopoldo"), who lived in Joshua Hall. (Id. ¶ 32.) Consequently,

4   Inmate Leopoldo was provided access to and allowed to keep the

5   records for over two weeks, during which time he circulated them to

6   other inmates. (Id. ¶ 34.) The medical records contained highly

7   personal information, including Plaintiff's HIV status, hepatitis C

8   diagnosis, and the fact that he had undergone surgery to correct a

9   urethral stricture. (Id. ¶ 35.)

10      On or about January 22, 2012, Plaintiff became aware that his

11  medical records had been disclosed to another prisoner when a

12  Joshua Hall inmate taunted Plaintiff about having "lost something."

13  (Id. ¶ 37.) Plaintiff was also taunted by several other inmates,

14  including Leopoldo, about the disclosure. (Id. ¶ 38.) Leopoldo,

15  however, never disclosed that he was the recipient of Plaintiff's

16  medical records. (Id.)

17      Plaintiff notified Defendant Officer Valenzuela

18  ("Valenzuela"), a CDCR employee, about the disclosure and requested

19  her assistance in retrieving his medical records. (Id. ¶ 39.)

20  Valenzuela told Plaintiff that she would not become involved or

21  notify anyone else at CDCR because it was a "legal matter." (Id.)

22  Given Valenzuela's response, Plaintiff was unsure where to turn for

23  help. (Id. ¶ 40.) On or about February 1, 2012, he spoke to an

24  officer who worked in the "pill line" about the disclosure. (Id.)

25  The officer instructed Plaintiff to speak to Defendant Sgt. Nash

26  ("Nash"), a prison guard. (Id.) That day, Plaintiff notified Nash

27  about the incident. (Id. ¶ 41.) Plaintiff never received a

28  response. (Id.)

1    On or about February 7, 2012, Plaintiff, met with CDCR
2  Psychiatrist Dr. Kondo ("Kondo"). (Id. ¶ 42-43.) During the
3  appointment, Kondo contacted Defendant Sgt. Botello ("Botello"), a
4  CDCR prison guard in Angeles Hall. (Id. ¶ 43.) Botello told
5  Plaintiff he would not collect the records until Plaintiff could
6  provide the identity of the inmate in possession of the records.
7  (Id. ¶ 44.) Plaintiff did not have his information, as he and
8  Leopoldo resided in different halls of the prison. (Id. ¶ 44.)
9  Moreover, none of the inmates who Plaintiff asked to identify the
10  recipient of his records were willing to identify Leopoldo. (Id. ¶
11  45.) Plaintiff, hoping to identify the inmate, requested a meeting
12  with Defendant Young, the health technician who had given Leopoldo
13  the records. (Id. ¶ 46.) However, Young refused to meet with
14  Plaintiff, and he was told he needed to meet with her supervisor,
15  Defendant Bernice Logan ("Logan"). (Id. ¶¶ 46-47.)
16    On February 9, 2012, Botello informed Plaintiff that his
17  records had been retrieved from the "officer of the day" in Joshua
18  Hall. (Id. ¶ 49.) The retrieval of the records occurred twenty days
19  after the records were initially disclosed and nineteen days after
20  CDCR officials were initially notified about the disclosure. (Id. ¶
21  50.)
22    Plaintiff asserts two claims. The first claim is brought under
23  42 U.S.C. § 1983 and the Fourteenth Amendment of the U.S.
24  Constitution against Defendants Young, Logan, Nash, Botello,
25  Valenzuela, and Does 1-10. (Id. ¶¶ 93-95.) The second claim is
26  brought pursuant to Article I, Section 1 of the California
27  Constitution against same Defendants, as well as the California
28  Department of Corrections and Rehabilitation (CDCR), Jeffery Beard

(Secretary of CDCR) and Matthew Cate (Former Secretary of CDCR). (<u>Id.</u> ¶¶ 96-106.)

## II.  Legal Standard

A complaint will survive a motion to dismiss when it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). When considering a Rule 12(b)(6) motion, a court must "accept as true all allegations of material fact and must construe those facts in the light most favorable to the plaintiff." <u>Resnick v. Hayes</u>, 213 F.3d 443, 447 (9th Cir. 2000). Although a complaint need not include "detailed factual allegations," it must offer "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Iqbal</u>, 556 U.S. at 678. Conclusory allegations or allegations that are no more than a statement of a legal conclusion "are not entitled to the assumption of truth." <u>Id.</u> at 679. In other words, a pleading that merely offers "labels and conclusions," a "formulaic recitation of the elements," or "naked assertions" will not be sufficient to state a claim upon which relief can be granted. <u>Id.</u> at 678 (citations and internal quotation marks omitted).

"When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief." <u>Id.</u> at 679. Plaintiffs must allege "plausible grounds to infer" that their claims rise "above the speculative level." <u>Twombly</u>, 550 U.S. at

555. "Determining whether a complaint states a plausible claim for relief" is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Iqbal, 556 U.S. at 679.

## III. Discussion

### A.   Section 1983 Claim

Defendants move to dismiss Plaintiff's Section 1983 claim on three grounds: (1) that Plaintiff has failed to allege the personal participation of Defendants Logan, Botello, and Valenzuela in the alleged violations, as required for liability under Section 1983; (2) that all Defendants are entitled to qualified immunity to the extent that they are sued in their individual capacities; and (3) that all Defendants are entitled to Eleventh Amendment sovereign immunity to the extent that they are sued in their official capacities.[2] (Motion at 4-10.)

Because it is dispositive as to all claims brought against Defendants in their personal capacities, the court addresses the issue of qualified immunity first.

---

[2] Plaintiff asserts in his Opposition that Defendants violated Local Rule 7-3 by failing to raise all of the grounds for dismissal asserted in their moving papers when the parties met and conferred on May 9, 2014 with respect to this motion. (Opposition at 1-4.) Defendants did not respond to this contention in their Reply. The court expects the parties to fully comply with their obligations under this district's Local Rules. While, in the interest of adjudicating this dispute on the merits, the court has considered all of the arguments set forth in the parties' papers, going forward the court will not hesitate to impose appropriate sanctions for either party's failure to comply with their meet and confer obligations.

i.    **Qualified Immunity**

Section 1983 creates a private right of action against individuals who, acting under color of state law, violate federal constitutional or statutory rights. 42 U.S.C. § 1983. Qualified immunity, however, shields Section 1983 defendants "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

In Saucier v. Katz, 533 U.S. 194 (2001), the Supreme Court clarified the two-step qualified immunity inquiry. To decide whether a defendant is protected by qualified immunity, a court must first determine whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." Id. at 201. If the plaintiff's factual allegations do add up to a violation of the plaintiff's federal rights, then the court must proceed to determine whether the right was "clearly established," i.e., whether the contours of the right were already delineated with sufficient clarity to make a reasonable officer in the defendant's circumstances aware that what he was doing violated the right. Id. at 201-02. In essence, at the first step, the inquiry is whether the facts alleged constitute a violation of the plaintiff's rights. If they do, then, at the second step, the question is whether the defendant could nonetheless have reasonably, but erroneously, believed that his or her conduct did not violate the plaintiff's rights. Id. at 205 ("The concern of the immunity inquiry is to acknowledge that reasonable mistakes can be made as to the legal

1    constraints on particular police conduct."). Courts may exercise
2    their sound discretion in deciding which of the two prongs should
3    be addressed first in light of the circumstances in the particular
4    case at hand. <u>Pearson v. Callahan</u>, 555 U.S. 223, 236 (2009).

5         Defendants contend that Plaintiff has not alleged a violation
6    of a constitutional right by Defendants. The court agrees. While
7    the court is persuaded that the right to privacy regarding medical
8    information invoked by Plaintiff exists and is applicable to
9    prisoners absent circumstances that do not appear to be relevant,
10   Plaintiff has not alleged sufficient facts to show that he suffered
11   a non-negligent deprivation of the right.

12        **a.    The right to privacy of medical information**

13        The Ninth Circuit has repeatedly recognized a constitutionally
14   protected interest in avoiding disclosure of personal matters,
15   including medical information. <u>See, e.g.</u>, <u>Nelson v. Nat'l</u>
16   <u>Aeronautics & Space Admin.</u>, 530 F.3d 865, 877 (9th Cir. 2008) <u>rev'd</u>
17   <u>on other grounds and remanded</u>, 131 S. Ct. 746 (U.S. 2011)
18   ("Information relating to medical treatment and psychological
19   counseling fall squarely within the domain protected by the
20   constitutional right to informational privacy.") (citations
21   omitted); <u>Tucson Woman's Clinic v. Eden</u>, 379 F.3d 531, 551 (9th
22   Cir. 2004) ("Individuals have a constitutionally protected interest
23   in avoiding 'disclosure of personal matters,' including medical
24   information.") (quoting <u>Whalen v. Roe</u>, 429 U.S. 589, 599 (1977));
25   <u>Norman-Bloodsaw v. Lawrence Berkeley Lab.</u>, 135 F.3d 1260, 1269 (9th
26   Cir. 1998) ("The constitutionally protected privacy interest in
27   avoiding disclosure of personal matters clearly encompasses medical
28   information and its confidentiality."); <u>Doe v. Attorney Gen. of</u>

1  U.S., 941 F.2d 780, 795 (9th Cir. 1991) (holding that "medical
2  information was encompassed within the . . . privacy interest
3  related to disclosure of personal matters."). The Ninth Circuit's
4  recognition of a right to privacy applicable to medical records
5  stems from the Supreme Court's recognition in Whalen that there is
6  a privacy interest "in avoiding disclosure of personal matters."
7  Whalen, 429 U.S. at 599.

8      Defendants cite two aspects of Seaton v. Mayberg, 610 F.3d
9  530, 538 (9th Cir. 2010), the Ninth Circuit's most recent case
10  dealing with medical privacy, which they contend limits the
11  applicability of the right to informational privacy in relation to
12  medical information and in relation to prisoners. (See Motion at
13  8.)

14      First, referring to the Ninth Circuit's previous recognition
15  of the right to informational privacy with respect to medical
16  records, the Ninth Circuit stated in Seaton: "It is not entirely
17  clear yet whether the constitutional right we have recognized falls
18  entirely within the class Whalen carves out, for disclosure that
19  burdens 'matters relating to marriage, procreation, contraception,
20  family relationships, and child rearing and education.'" 610 F.3d
21  at 537 (quoting Whalen, 429 U.S. at 600 n.26). In Whalen, the
22  Supreme Court cited the enumerated areas as ones in which "it has
23  been held that there are limitations on the States' power to
24  substantively regulate conduct." See 429 U.S. at 600 n.26.

25      This court understands the sentence quoted from Seaton above
26  to refer to the fact that the Supreme Court has never expressly
27  recognized a right to informational privacy with respect to medical
28  information and that its grant of certiorari in Nelson, which was

1   pending at the time Seaton was decided, raised the prospect that,
2   in reviewing Nelson, the Supreme Court might hold that no such
3   constitutional right exists, invalidating the Ninth Circuit's
4   jurisprudence on this question. As noted, Nelson, like Tucson,
5   Norman-Bloodsaw, and Doe before it, explicitly recognized an
6   informational right to privacy encompassing information concerning
7   medical treatment. See Nelson, 530 F.3d at 877. The Seaton court
8   attributed its perception of a lack of clarity as to the
9   applicability of a privacy right in relation to medical records to
10  the Supreme Court's grant of certiorari in Nelson, which, the court
11  stated, rendered the Ninth Circuit's decision in that case "not yet
12  final." 610 F.3d at 538.

13      The Supreme Court has since decided Nelson, reversing and
14  remanding the case. 131 S.Ct. at 746. However, in doing so, the
15  Supreme Court did not reverse the Ninth Circuit on the issue of the
16  existence of a right to informational privacy and its applicability
17  to medical records. See 131 S.Ct. at 756 (noting that the court
18  "assume[s] for present purposes that the Government's challenged
19  inquiries [of government contract employees regarding certain
20  medical treatment] implicate a privacy interest of constitutional
21  significance"). The Supreme Court's decision in Nelson thus appears
22  to leave intact the Ninth Circuit's longstanding recognition of an
23  informational privacy right encompassing medical information.

24      Second, Seaton held that prison inmates "do not have a
25  constitutionally protected expectation of privacy in prison
26  treatment records when the state has a legitimate penological
27  interest in access to them." 610 F.3d at 534. In Seaton, hospital
28  psychologists who examined an inmate convicted of forcible rape

shared their opinions with the district attorney's office for the purposes of evaluating whether to seek civil commitment of the plaintiff. Id. The prisoner subsequently brought a Section 1983 claim, alleging that his constitutional right to informational privacy under the Due Process Clause of the Fourteenth Amendment had been violated. Id. The court dismissed the claim, finding a substantial, legitimate penological interest in disclosing the plaintiff's records existed because "[p]risons need access to prisoners' medical records to protect prison staff and other prisoners from communicable diseases and violence, and to manage rehabilitative efforts." Id. at 534–35. In the present case, Defendants do not contend that the disclosure of Plaintiff's medical records to other inmates served any penological interest.

Thus, under Ninth Circuit authority, Plaintiff has a constitutional right to informational privacy applicable to medical information, including the medical records allegedly disclosed in this case. A question remains, however, whether Defendants' alleged conduct constituted an actionable violation of this right under Section 1983.

**b.   Lack of violation of constitutional right**

Plaintiff's allegations fall into two categories: (1) the initial disclosure of his records, and (2) the failure of Defendants to remedy the disclosure by retrieving his medical records.

As to the initial disclosure, Plaintiff's allegations are insufficient to state a claim because Plaintiff has alleged only negligent conduct by Defendants. It is well established that negligent conduct is ordinarily not enough to state a claim

1    alleging a denial of liberty or property under the Fourteenth
2    Amendment. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 330 (1986);
3    <u>Davidson v. Cannon</u>, 474 U.S. 344, 347 (1986) ("[T]he Due Process
4    Clause of the Fourteenth Amendment is not implicated by the lack of
5    due care of an official causing unintended injury to life, liberty
6    or property. In other words, where a government official is merely
7    negligent in causing the injury, no procedure for compensation is
8    constitutionally required.").

9        The highly sensitive nature of personal medical information
10   requires that the government take correspondingly robust
11   precautions to safeguard individual privacy. Indeed, the status of
12   one's personal medical well-being is among the most sensitive
13   information a person may possess. The evolving appreciation of the
14   importance of preventing the involuntary disclosure of such
15   information is reflected, among other developments, by the 1996
16   enactment of the Health Insurance Portability and Accountability
17   Act (HIPAA), Pub.L. 104-191, 110 Stat. 1936, which "recogniz[ed]
18   the importance of protecting the privacy of health information in
19   the midst of the rapid evolution of health information systems."
20   <u>Webb v. Smart Document Solutions, LLC</u>, 499 F.3d 1078, 1083 (9th
21   Cir. 2007) (quotation marks and citation omitted). Disclosures
22   resulting from a failure by Defendants to take appropriately robust
23   safeguards may constitute conduct that is more than negligent and
24   thus subject to liability under Section 1983.

25       Here, however, Plaintiff has not alleged any facts to show
26   that the government failed to take appropriate precautions and that
27   the disclosure was a result of such a failure. The FAC expressly
28   alleges that the disclosure of Plaintiff's medical records by

1   Defendant Young on January 21, 2012, was "negligent[]." (FAC ¶ 64.)

2   Plaintiff's factual allegations do not contradict this

3   characterization, stating only that "Young had in fact given

4   Plaintiff's medical records to another inmate. . ." (Id. ¶ 32.)

5   Therefore, Plaintiff has not alleged that the government violated

6   its duty of care.

7       As to the alleged failure of Defendants to retrieve the

8   records, the court does not understand such conduct to be an

9   independent basis for liability. Rather, the alleged failure to

10  retrieve the records appears to go to the failure of Defendants to

11  address the harm caused by the original disclosure.

12      Plaintiff contends in his Opposition that Defendants' failure

13  to retrieve the records may be analyzed under the "deliberate

14  indifference" standard set forth in Estelle v. Gamble, 429 U.S. 97,

15  103 (1976) (holding that the intentional delay in providing

16  necessary medical care to a seriously ill inmate can constitute

17  "deliberate indifference" and thus violate the Eighth Amendment's

18  prohibition on cruel and unusual punishment). Plaintiff has cited

19  no authority to establish that the deliberate indifference standard

20  is applicable in Section 1983 claims based upon violations of the

21  Fourteenth Amendment, but there is support for this proposition.

22  See, e.g., Wood v. Ostrander, 879 F.2d 583 (9th Cir. 1989)

23  (holding, in the context of Fourteenth Amendment claim alleging

24  that a state trooper abandoned the plaintiff in an area in which

25  the trooper knew she would be in danger, that deliberate

26  indifference by state actors to known or obvious dangers created by

27  their conduct is actionable under Section 1983).

28

1    However, Plaintiff has not alleged, as he must to show
2    deliberate indifference, that Defendants "knew of, and
3    nevertheless, consciously disregarded a substantial risk of serious
4    harm to [him]." Taylor v. City & Cnty. of San Francisco, 166 F.3d
5    344, 344 (9th Cir. 1999). Plaintiff has alleged only that his
6    medical records were inappropriately disclosed and that he notified
7    Defendants of this fact. (FAC ¶¶ 39-47.) He has not alleged that
8    his personal safety was under threat as a result of the disclosure;
9    that he notified Defendants, or that they were otherwise aware, of
10   this threat; and that Defendants nevertheless failed to take
11   appropriate action. Absent sufficient allegations of this sort, the
12   FAC does not state a viable claim of deliberate indifference under
13   Section 1983.

14        Because Plaintiff has not alleged an actionable violation of
15   Section 1983, the court does not reach the question of whether the
16   privacy right at issue was "clearly established," so as to make a
17   reasonable officer in Defendants' circumstances aware that what he
18   was doing violated the right. Saucier, 533 U.S. at 194.

19        Because it is not clear that amendment would be futile, the
20   court will dismiss with leave to amend.

21   **ii.  Eleventh Amendment Sovereign Immunity**

22        Defendants contend that, to the extent that Plaintiff
23   additionally asserts claims for money damages against Defendants in
24   their official capacities, such claims are barred under the
25   Eleventh Amendment.

26        Defendants are correct. The Eleventh Amendment bars any suit
27   against a state or state agency absent a valid waiver or abrogation
28   of its sovereign immunity. Hans v. Louisiana, 134 U.S. 1, 10

(1890). Neither exception to sovereign immunity is applicable to Section 1983 claims against the State of California, its agencies, or its officials in their official capacity because the Supreme Court has held that "§ 1983 was not intended to abrogate a State's Eleventh Amendment immunity," <u>Kentucky v. Graham</u>, 473 U.S. 159, 169 n.17 (1985), and the "State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court." <u>Dittman v. California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999). It is also well established that a suit brought against a state official in his or her official capacity is a suit against that person's office, and thus the state itself, and is therefore barred under the Eleventh Amendment. <u>See</u> <u>Will v. Mich.</u> <u>Dep't of State Police</u>, 491 U.S. 58, 64-66 (1989). Accordingly, Plaintiff's claims against Defendants must be dismissed to the extent that Defendants are sued in their official capacities. As the Eleventh Amendment constitutes a fatal bar to Plaintiff's claims, dismissal will be with prejudice.

**B.    State Law Claims**

   Defendants argue that Plaintiff's state law claim, which seeks relief under Article I, Section 1 of the California Constitution, should be dismissed because Plaintiff has not alleged a sufficiently serious violation of his state constitutional right to privacy and because the claim is subject to various statutory immunities. (Mot. at 11-15.) The court does not reach these arguments. Because the court has already "dismissed all claims over which it has original jurisdiction," 28 U.S.C. § 1367(c)(3), the

1  court declines to exercise supplemental jurisdiction over the

2  remaining state law claim.

3

4  **IV. Conclusion**

5      For the reasons stated herein, Defendants' Motion to Dismiss

6  is GRANTED, as follows: Count I of Plaintiff's First Amended

7  Complaint is DISMISSED WITHOUT PREJUDICE as to all Defendants named

8  in their individual capacities; Count I is DISMISSED WITH PREJUDICE

9  as to all individual Defendants named in their official capacities;

10 Count II is DISMISSED WITHOUT PREJUDICE as to all Defendants for

11 lack of jurisdiction. No relief is therefore warranted as to either

12 claim. Plaintiff shall file a Second Amended Complaint within

13 twenty-one days of this Order.  Failure to do so may lead to the

14 dismissal of this action.

15

16 IT IS SO ORDERED.

17 Dated: July 14, 2014

18                DEAN D. PREGERSON
                  United States District Judge

19

20

21

22

23

24

25

26

27

28

16